# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROXUL USA., INC., | |
| Plaintiff, | |
| v. | C.A. NO. 17-CV-1258-MAK |
| ARMSTRONG WORLD INDUSTRIES, INC., | |
| Defendant. | |

## DEFENDANT ARMSTRONG WORLD INDUSTRIES' LIMITED DISCOVERY MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM PLAINTIFF ROXUL USA, INC.

Defendant Armstrong World Industries, Inc. moves to compel Plaintiff Roxul USA, Inc. ("Rockfon") to produce relevant documents from the custodial files of the CEO (Birgersson), former CEO (van Heel), and former Chairman (Jensen) of Rockfon's Danish parent, Rockwool International A/S.  Evidence from Rockwool is highly relevant in this antitrust case, in which Plaintiff alleges that "exclusivity agreements have unfairly prevented Rockfon from obtaining a comparable market share between the parties in the [U.S.] Market that exists in Europe."  Compl. ¶ 81.  Armstrong has sought discovery regarding Rockwool's decision to start selling ceiling tile in the U.S. at a time of weakness in building markets, its decision to supply the U.S. for almost 5 years solely through imports from its plants in Europe, its acquisition of Chicago Metallic Corp. ("CMC"), a U.S. ceiling grid manufacturer with a network of building products distributors ("BPDs"), its experience with distributing Rockwool insulation products through U.S. BPDs, its management and oversight of Rockfon's business strategies, and its numerous representations made to investors regarding the growth and success of Rockfon's U.S. ceiling tile business.  *See* Ex. 1 at ¶ 1.  Rockfon has not contested the relevance of the discovery but has agreed to search the files of just two Rockwool custodians, excluding the most important actors and decision-makers.[1]  Rockfon initially resisted based on (unsubstantiated) translation costs but Armstrong seeks only documents that respond to English-language search terms.  *Id.* at ¶ 3.  Rockfon later claimed that it had no ability to produce documents from the files of Birgersson, van Heel, and Jensen but this belated argument rings hollow given its ability to produce other Rockwool documents.  *Id.*  Despite good-faith efforts to resolve the dispute, the parties have reached an impasse.  *See* Ex. 1 at ¶ 5.

**The proposed custodians are key decision-makers**.  Rockfon has not denied that van

---

[1] By contrast, Armstrong agreed to designate all of the 27 custodians sought by Rockfon, including its CEO and many of its senior executives.

Heel, Birgersson, and Jensen possess relevant information. Mr. Birgersson is both CEO <u>and</u> the assigned group executive responsible for all of Rockwool's business activities in North America, including ceiling systems and insulation. Ex. 2 at 1; Ex. 3 at 6. He has overseen Rockfon's expansion in the U.S., including the recent opening of a domestic manufacturing facility, remarking that "[t]he U.S. market is increasingly important for Rockfon and the ROCKWOOL Group" amid "growing demand" for Rockfon's ceiling products. Ex. 4. Mr. van Heel was the President and CEO of Rockwool from 2004-2015, greenlighting Rockfon's U.S. entry and the CMC acquisition. Ex. 5 at 2. Mr. Jensen joined the Rockwool Board in 2009 and served as its Chair from 2014-2017, playing an active role in Rockfon's entry and expansion. Ex. 6 at 7; Ex. 7 at 4. Far from claiming Rockfon has been "injured," "stunted" and "foreclosed" from the market, Compl. ¶¶ 72, 80, 104, these executives have repeatedly represented to investors that Rockfon's U.S. entry was successful and its prospects bright. *See* Ex. 8; Exs. 12-16. Just months before filing suit, Birgersson and Jensen issued Rockwool's annual report stating: "With a new ceiling tile plant, for our ROCKFON offering, coming on line in the middle of 2017, we are confident that we are able to serve the growing market for acoustic ceilings in … North America." Ex. 9 at 44.

**Rockfon has the ability to produce Rockwool documents**. Where a litigating subsidiary "can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party." *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 141 (3d Cir. 1988). Rockfon has already demonstrated the ability to secure documents from Rockwool by designating two Rockwool custodians (and one custodian from a sister company in the Rockwool Group). Ex. 1 at ¶¶ 2-4. As Rockfon informed the Court in its initial disclosures, discoverable documents "are located at Rockfon's offices in Copenhagen, Denmark" and may be

"in the possession of employees and agents of Rockfon located . . . throughout the world." Ex. 10 at 4. And Rockwool's pervasive involvement in Rockfon's activities indicates that Rockfon has access to Rockwool documents in the ordinary course of business:

- "*Rockwool* began selling Ceiling Tiles in the United States *through* its Rockfon subsidiary." Compl. ¶ 51 (emphases added).
- "Rockwool initially hired several employees and began selling Ceilings Tiles in North America in 2012. In 2013, Rockwool acquired Chicago Metallic Corporation ('CMC') in part to expand its opportunities and develop viable distribution options." Ex. 11 at 3.
- "During 2014, priority was given to merge the ROCKFON and Chicago Metallic businesses, … [and] sales of ceiling tiles in the US accelerated throughout the year supplied by imports from [*Rockwool's*] European factories." Ex. 7 at 17.
- Rockfon is part of the Rockwool Group, managed by the CEO and his Group Management team with "standardised information and reporting systems to identify, collect and communicate relevant information … on an ongoing basis and on all levels." Ex. 9 at 59, 61.

**The discovery is not burdensome**. The parties have negotiated search terms and limited the collection timeframe to no earlier than January 1, 2011 for most requests. Rockfon has raised translation issues but there is no requirement to translate documents into English. Indeed, the responsive documents are likely in English given that Rockwool is a multinational using English to communicate, Ex. 6 at 4, and the proposed custodians speak English. In any event, the search terms are in English and the requests focus on U.S. activities.[2] Moreover, the benefit of and need for discovery far outweighs any burden. And Rockfon has resisted searching Rockwool's noncustodial files, making discovery from Rockwool custodians essential. Ex. 1 at ¶ 3. If Rockfon were allowed to shield these documents from discovery, Armstrong would be forced to seek them through time-consuming and burdensome Hague Convention procedures, which would imperil the Court's schedule for completing discovery.

---

[2] For any documents that combine English and Danish, Rockfon can utilize US-qualified foreign-language reviewers.

DATE:  May 9, 2018    Respectfully submitted,

/s/ *Kevin J. Mangan*
Kevin J. Mangan (DE Bar No. 3810)
WOMBLE BOND DICKINSON (US) LLP
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
(320) 252-4320
kevin.mangan@wbd-us.com

Daniel G. Swanson (*pro hac vice*)
Shannon E. Mader (*pro hac vice*)
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:     213.229.7000
dswanson@gibsondunn.com
smader@gibsondunn.com

Cynthia E. Richman (*pro hac vice*)
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5306
Telephone:     202.955.8500
crichman@gibsondunn.com

Caeli A. Higney (*pro hac vice*)
Gibson, Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-2933
Telephone:     415.393.8200
chigney@gibsondunn.com

*Attorneys for Defendant Armstrong World Industries, Inc.*

4