**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROXUL USA, INC.,           ) | |
|                                  ) | |
|                Plaintiff,     ) | C.A. No. 17-CV-01258-MAK |

ROXUL USA, INC.,                    )
                                   )
                    Plaintiff,     )     C.A. No. 17-CV-01258-MAK
                                   )
          v.                       )
                                   )
ARMSTRONG WORLD                    )
INDUSTRIES, INC.,                  )
                                   )
                    Defendant.     )
                                   )

---

**PLAINTIFF ROXUL USA, INC.'S PROPOSED JURY INSTRUCTIONS**

        Pursuant to the Court's March 4, 2019 Scheduling Order (D.I. 271) and the Court's Policies & Procedures (Jan. 2019), Plaintiff Roxul USA, Inc. d/b/a Rockfon ("Rockfon" or "Plaintiff"), by and through its undersigned counsel, hereby submits the following proposed jury instructions on <u>substantive</u> issues unique to this matter.[1]   Rockfon reserves the right to supplement or amend these instructions as necessary.

---

[1] The Court's March 4, 2019 Order (D.I. 271) provides for the parties to file proposed jury instructions on March 11, 2019.  However, that order did not additionally extend the deadline for filing objections to the proposed jury instructions, which was set for the same day (March 11, 2019), pursuant to the Court's February 15, 2019 Order (D.I. 266).  To remedy this conflict, the parties have agreed to file objections to the proposed jury instructions on March 14, 2019.

## TABLE OF CONTENTS

**Page**

**PROPOSED INSTRUCTION NO. 1.:** The Parties' Contentions …………...…… 1

**PROPOSED INSTRUCTION NO. 2.:** The Purpose of the Antitrust Laws ………… 2

**PROPOSED INSTRUCTION NO. 3.:** Private Actions Under the Antitrust Laws … 3

**PROPOSED INSTRUCTION NO. 4.:** Common Elements and Concepts - Overview ……………………………………………………………….. 4

**PROPOSED INSTRUCTION NO. 5.:** Common Element - Interstate or Foreign Commerce ……………………………………………………………....... 5

**PROPOSED INSTRUCTION NO. 6.:** Common Element - Relevant Market in General …………………………………………………………………. 6

**PROPOSED INSTRUCTION NO. 7.:** Common Element - Relevant Geographic Market …………………………………………………………………. 7

**PROPOSED INSTRUCTION NO. 8.:** Common Element - Relevant Product Market ……………………………………………………………………. 8

**PROPOSED INSTRUCTION NO. 9.:** Common Concept - Market Power ……….. 10

**PROPOSED INSTRUCTION NO. 10.:** Common Concept - Foreclosure ………… 12

**PROPOSED INSTRUCTION NO. 11.:** Common Concept - Rule of Reason ………. 13

**PROPOSED INSTRUCTION NO. 12.:** Common Concept - Rule of Reason - Proof of Competitive Harm ……………………………………………………. 14

**PROPOSED INSTRUCTION NO. 13.:** Common Concept - Rule of Reason - Evidence of Competitive Benefits ……………………………………… 17

**PROPOSED INSTRUCTION NO. 14.:** Common Concept - Rule of Reason - Balancing the Competitive Effects ……………………………………… 18

**PROPOSED INSTRUCTION NO. 15.:** Claims - Overview ………………………… 19

**PROPOSED INSTRUCTION NO. 16.:** Sherman Act Section 1 - Unreasonable Restraint of Trade - Elements …………………………………………… 20

# TABLE OF CONTENTS

**Page**

**PROPOSED INSTRUCTION NO. 17.:** Sherman Act Section 2 - Monopolization - Elements …………………………………………………………………...    21

**PROPOSED INSTRUCTION NO. 18.:** Sherman Act Section 2 - Monopolization - Existence of Monopoly Power ………………………………………………    22

**PROPOSED INSTRUCTION NO. 19.:** Sherman Act Section 2 - Monopolization - Willful Maintenance of Monopoly Power …………………………………    25

**PROPOSED INSTRUCTION NO. 20.:** Sherman Act Section 2 - Attempted Monopolization Claim - Elements ……………………………………………    27

**PROPOSED INSTRUCTION NO. 21.:** Sherman Act Section 2 - Attempted Monopolization - Anticompetitive Conduct ………………………………    28

**PROPOSED INSTRUCTION NO. 22.:** Sherman Act Section 2 - Attempted Monopolization - Specific Intent ……………………………………...    29

**PROPOSED INSTRUCTION NO. 23.:** Sherman Act Section 2 - Attempted Monopolization - Dangerous Probability of Success…...………………………    31

**PROPOSED INSTRUCTION NO. 24.:** Clayton Act Section 3 Claim - Elements ….    33

**PROPOSED INSTRUCTION NO. 25.:** Clayton Act Section 3 Claim - Use, Consumption or Resale in the United States ………………………………    35

**PROPOSED INSTRUCTION NO. 26.:** Injury and Causation ………………………    36

**PROPOSED INSTRUCTION NO. 27.:** Definition of Business or Property ………..    38

**PROPOSED INSTRUCTION NO. 28.:** Antitrust Damages - Purpose ……………    39

**PROPOSED INSTRUCTION NO. 29.:** Antitrust Damages - Calculation …………    40

**PROPOSED INSTRUCTION NO. 30.:** Antitrust Damages - Lost Profits …………    41

**PROPOSED INSTRUCTION NO. 31.:** Causation and Disaggregation ……………    42

**PROPOSED INSTRUCTION NO. 32.:** Damages - Period …………………………...    43

## PROPOSED INSTRUCTION NO. 1

### The Parties' Contentions

Plaintiff Rockfon filed this lawsuit against Defendant Armstrong for alleged antitrust violations.  Rockfon alleges that Armstrong's exclusivity arrangements and territorial restraints, coupled with its dominant market position, violate federal antitrust law.  Rockfon claims that Armstrong's exclusivity arrangements—many of which include the "No Rockfon" Clause—unfairly harm competition by prohibiting customers from selling Rockfon ceiling tile products to end-users anywhere in the United States.  Rockfon brings three specific claims against Armstrong: (1) monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (2) attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; and (3) concerted action in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 3 of the Clayton Act, 15 U.S.C. § 14.

Armstrong denies these allegations.   Armstrong contends that it has not restrained trade or unlawfully maintained a monopoly.   Further, Armstrong contends that its exclusive dealing arrangements did not substantially foreclose competition or result in harm to competition, did not cause injury to Rockfon, and did not cause any alleged damages.   Armstrong contends that its exclusivity arrangements were procompetitive in nature.

**Authority For Instruction:**

Third Circuit General Instructions for Civil Cases, Charge No. 1.2; *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions) (adapted) (Instruction 17).

## PROPOSED INSTRUCTION NO. 2

### The Purpose of the Antitrust Laws

The primary purpose of the antitrust laws is to preserve and promote our system of free and open competition and to secure everyone an equal opportunity to engage in business, trade, and commerce, by preventing unreasonable restraint or monopolization of any business or industry so that the consuming public may receive better goods and services at lower cost.  The Sherman Act, specifically, rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.  The law directs itself not against conduct that is competitive, even severely so, but against conduct that unfairly tends to destroy competition itself.  The antitrust laws are geared toward protecting the consumer, and you should keep that in mind as you hear evidence about the alleged antitrust violations.

**Authority for Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Sherman Act – General, Instruction 1; *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions) (adapted) (Instruction 18).

## **PROPOSED INSTRUCTION NO. 3**

### **Private Actions Under the Antitrust Laws**

Rockfon's lawsuit is known as a private antitrust action.  Private antitrust actions are a means of enforcing the antitrust laws, because they serve to deter defendants who have violated the antitrust laws from violating the law in the future.

**Authority for Instruction:**

Areeda & Hovenkamp, *Antitrust Law* ¶ 355b1 (1995) ("private enforcement . . . increases the likelihood that a violator will be found out . . . and thereby helps discourage illegal conduct."); *Am. Soc'y of Mech. Eng'Rs v. Hydrolevel Corp.*,456 U.S. 556, 569 (1982) ("It stated there that 'the purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat' to deter antitrust violations."); *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 340 (1971) ("Private actions serve as a bulwark of antitrust enforcement").

## PROPOSED INSTRUCTION NO. 4

### Common Elements and Concepts - Overview

I will now turn to the portion of my instructions that will guide you in assessing Plaintiff's claims and applying the law to the facts you find. Because Plaintiff's claims have certain overlapping components, I am going to first instruct you on concepts that may appear as "common elements" or "common concepts" so that you have the information you need in one place.

**Authority For Instruction:**

*GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions) (adapted) (Instruction 19).

4

## PROPOSED INSTRUCTION NO. 5

### Common Element - Interstate or Foreign Commerce

Antitrust law applies only to conduct or restraints that affect interstate commerce.  In this case, Rockfon contends that Armstrong's conduct affects interstate commerce.  Interstate commerce refers to transactions in goods or services between one or more persons in one state and one or more persons in another state.

To affect interstate commerce, it is not necessary that Defendant's conduct itself occur in multiple states or directly affect transactions that span across multiple states.  It is enough if some activities of Armstrong that were affected by the conduct had some effect on interstate commerce.

**Authority For Instruction:**

*GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## PROPOSED INSTRUCTION NO. 6

### Common Element - Relevant Market in General

You will see that each of Rockfon's claims requires you to analyze whether the accused conduct had anticompetitive effects. These effects must occur with respect to a relevant market; Rockfon must prove the relevant market(s) by a preponderance of the evidence.

There are two aspects you must consider in determining whether Rockfon has met its burden to prove the relevant market(s). The first is the relevant *product* market. The second is the relevant *geographic* market.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Monopolization – General, Instruction 3 (adapted); *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

6

## PROPOSED INSTRUCTION NO. 7

### Common Element - Relevant Geographic Market

The relevant geographic market is the area in which Rockfon and Armstrong face competition from other firms that compete in the relevant product market, and where customers can reasonably turn for purchases.  When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one geographic area have substantial effects on prices or sales in another geographic area, which would tend to show that both areas are in the same relevant geographic market.  The geographic market may be as large as nationwide or as small as a single town or neighborhood.

Rockfon has the burden of proving the relevant geographic market by a preponderance of the evidence.  In this case, Rockfon claims that the relevant geographic market is the United States.  In determining whether Rockfon has met its burden and demonstrated that its proposed geographic market is proper, you may consider several factors, including, but not limited to:

- The geographic area in which Rockfon and Armstrong sell and where their customers are located;

- The geographic area to which customers have turned, or have seriously considered turning to, for supply;

- The transportation cost differences between the areas;

- The geographic areas that suppliers view as potential sources of competition; and

- Whether governmental licensing requirements, taxes, or quotas have the effect of limiting competition in certain areas.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Monopolization – General, Instruction 6; *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

7

## PROPOSED INSTRUCTION NO. 8

### Common Element - Relevant Product Market

Rockfon must prove, by a preponderance of the evidence, the existence of a relevant product market.  The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view – that is, the products compete with each other.  In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable so long as they are reasonable substitutes.   Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material such as aluminum foil, cellophane, or even plastic containers - to be reasonable alternatives, then all those products would be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another.  In other words, will customers accept the price increase or will so many switch to alternative products that the price increase will be withdrawn?  Generally speaking, a small but significant permanent increase in price is approximately a 5% increase in price not due to cost factors, but you may conclude in this case that some other percentage is more applicable to the product at issue.  If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the same product market.

In evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may consider: (1) consumers' views on whether the products are interchangeable; (2) the relationship between the price of one product and the sales of another; (3) the presence or absence of specialized vendors; (4) the perceptions of either the industry or the public as to whether the products are in separate markets; (5) the views of Rockfon and Armstrong regarding which products compete against each other; (6) the existence or absence of different customer groups or distribution channels; (7) disadvantages to using other products that might deter customers from substituting to products outside of the market; and (8) differences in prices for particular products.

In this case, Rockfon contends that the relevant product market is the market for standard acoustical ceiling tiles.  Armstrong does not contend otherwise.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Monopolization – General, Instruction 4; *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 469 n.15 (1992); *ProMedica Health Sys. v. FTC*, 749 F.3d 559, 565 (6th Cir. 2014); *Novell, Inc. v. Microsoft Corp.*,731 F.3d 1064, 1071 (10th Cir. 2013); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 190-91 (3d Cir. 2005); *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## <u>PROPOSED INSTRUCTION NO. 9</u>

### Common Concept - Market Power

In determining if Armstrong's alleged restraints substantially harmed competition, you should consider whether Armstrong had market power.

Market power is defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market. A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power.

In determining whether Armstrong has market power, you may consider Armstrong's share or portion of the relevant market; that is, its percentage of the products or services sold in the relevant market by all competitors. The mere possession of market power is not unreasonable or illegal. If you find that Armstrong possesses market power, you must still consider other elements of Rockfon's claims that I will discuss further below.

Factors you may consider in determining whether Armstrong has market power include whether there are any durable barriers to entry by new firms in the market, and evidence concerning the intensity of competition within that market. In addition, if you decide that the buyers are sophisticated businesses themselves which have countervailing power in negotiating contracts, this may offset any market power Defendant might otherwise have. If a plaintiff cannot show that a defendant had the power to force buyers to enter into exclusive contracts they did not want, this would be an indication that the defendant lacks market power. You should consider whether the process in which Armstrong secured exclusive contracts itself involved competition.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Sherman Act – General, Instruction 3B (adapted); *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## PROPOSED INSTRUCTION NO. 10

### Common Concept - Foreclosure

Foreclosure means that rivals are prevented from competing for an account.  Total foreclosure is not required for the restraints at issue to be unlawful, nor is complete exclusivity required with each customer.  In determining whether the accused conduct foreclosed competition on the merits, it is also relevant to consider the percentage of the market foreclosed.  Where the exclusive dealing arrangements foreclosed more than 50 percent of the market, this is an indicator that the harm from the foreclosure of competition could be substantial.  Where the exclusive dealing arrangements foreclose less than 20 percent of the market, this tends to indicate that the harm from the foreclosure of competition is not substantial because alternatives are available.

Foreclosure is considered substantial only when it weakens competitors to such an extent that the competitors cannot constrain the power of the defendant, here Armstrong, to raise prices, lessen buying options, restrict output, or lessen quality.  If there are sufficient alternative ways for competing suppliers to effectively reach end users with their products, then a restraint does not foreclose competitors' access to the market.

**Authority For Instruction:**

*GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## PROPOSED INSTRUCTION NO. 11

### Common Concept - Rule of Reason

In this case, Rockfon claims that Armstrong's exclusive dealing arrangements constitute unreasonable restraints of trade that resulted in an adverse effect on competition under Section 1 of the Sherman Act and Section 3 of the Clayton Act.  It is your job to determine whether the alleged restraints challenged here are unreasonable under what is known as the "rule of reason." A restraint of trade is illegal only if it is found to be unreasonable.  You must determine, therefore, whether the alleged restraints challenged here are unreasonable restraints of trade.  In making this determination, you must first determine whether Rockfon  has proven that the challenged restraints resulted in a substantial harm to competition in the relevant markets.

If you find that Rockfon has proven that the challenged restraints resulted in a substantial harm to competition in the relevant markets, then you must consider whether the restraints produced countervailing competitive benefits.  If you find that they did, then you must balance the competitive harm against the competitive benefit.  The challenged restraint is illegal only if you find that the competitive harm outweighs the competitive benefit.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Sherman Act – General, Instruction 3A (adapted); *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## PROPOSED INSTRUCTION NO. 12

### Common Concept - Rule of Reason - Proof of Competitive Harm

As I mentioned, in order to prove that a challenged restraint is unreasonable, Rockfon first must demonstrate that the restraint has resulted in a substantial harm to competition. Although it may be relevant to the inquiry, harm that occurs merely to the individual business of Rockfon is not sufficient, by itself, to demonstrate harm to competition generally. That is, harm to a single competitor does not necessarily mean that there has been harm to competition.

A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, more product options, increased output, and higher product quality. If the challenged conduct did not or has not resulted in higher prices, less product choices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm and you should find that the challenged conduct was not unreasonable.

In determining whether the challenged restraint produced competitive harm, you may look at the following factors:

- the effect of the restraint on prices, output, product quality, and service;

- the purpose and nature of the restraint;

- the nature and structure of the relevant market, both before and after the restraint was imposed;

- the number of competitors in the relevant market and the level of competition among them;

- whether new competitors entered the market, both before and after the restraint was imposed;

- whether the restraint targeted a new market entrant; and

- whether Armstrong possesses market power.

To determine whether the accused conduct had a substantial harmful effect on competition, you should consider, with respect to the relevant markets: the nature and history of the use of exclusive dealing contracts in the relevant market; whether distributors and resellers had independent reasons for entering into exclusive dealing contracts or were coerced into entering into them; whether other competing suppliers also offered exclusive contracts; the extent of competition among competing suppliers for exclusive contracts with buyers; Armstrong's position in the relevant market; the competitive alternatives to Armstrong's products or services; the reasons Armstrong and the distributors entered into the exclusivity agreements at issue; the effect of the use of exclusive dealing contracts on the ability of new firms to enter the relevant market and on price and other competition in the relevant market; as well as Armstrong's market power.

In determining the extent to which the challenged restraint(s) foreclosed competition on the merits, it is relevant to consider the percentage of the market foreclosed and the length of the foreclosure. Where the exclusive dealing arrangements foreclose more than 50 percent of the market, this is an indicator that the harm from the foreclosure of competition is substantial. Where the exclusive dealing arrangements foreclose less than 20 percent of the market, this is an indicator that the harm from the foreclosure of competition is not substantial because there are alternatives available. However, these are simply factors for you to consider – they are not dispositive. In the end, the key question is whether it was practical for the distributors to terminate the exclusive dealing arrangement with Armstrong, and if it was not, whether the

coercion to exclusively deal with Armstrong foreclosed a substantial share of the relevant market such that competition was harmed.

Similarly, the ability of new competitors to enter the market is relevant to the issue of competitive harm.  For example, suppose an established manufacturer that long held a dominant position is beginning to lose market share to a young rival.  A set of strategically-planned exclusive dealing arrangements may slow the new entrant's expansion by forcing it to develop alternative outlets for its product, or rely on (at least temporarily), inferior or more expensive outlets.  Consumer injury results from the delay the dominant firm imposes on the new rival's growth.

In considering all of these facts, you should determine whether the exclusive dealing contract adversely affected the price paid by distributor or reseller or end-user.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Sherman Act – General, Instruction 3B (adapted); ABA Model Jury Instructions in Civil Antitrust Cases, Sherman Act – Other Non-Vertical Price Restraints, Instruction 2 (adapted); ABA Section of Antitrust Law, Antitrust Law Developments (Sixth), Vol. 1, pp. 216-217 and cases collected at notes 1266-1267); *ZF Meritor LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012) *cert. denied*, 133 S. Ct. 2025 (2013); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1059 (8th Cir. 2000) ("The principle criteria used to evaluate the reasonableness of a contractual arrangement include the extent to which competition has been foreclosed in a substantial share of the relevant market, the duration of any exclusive arrangement, and the height of entry barriers."); *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions) (adapted) (Instruction 28).

## PROPOSED INSTRUCTION NO. 13

### Common Concept - Rule of Reason - Evidence of Competitive Benefits

If you find that Rockfon has proved that any of the challenged restraints resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraint also benefits competition in other ways.  If you find that Armstrong has proved that the challenged restraint does result in competitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve the benefits.  If Rockfon proves that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Sherman Act – General, Instruction 3C (adapted); *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## PROPOSED INSTRUCTION NO. 14

### Common Concept - Rule of Reason - Balancing the Competitive Effects

If you find that the challenged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint.

If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors. Rockfon bears the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Sherman Act – General, Instruction 3D; *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## PROPOSED INSTRUCTION NO. 15

### Claims - Overview

Now that we have covered some of the common concepts that apply to Rockfon's claims, I am going to turn to instructing you on the specific elements of each of Rockfon's claims. For elements that are not covered by the common elements instructions above, I will provide you with the information you need in the following instructions.

**Authority For Instruction:**

*GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## PROPOSED INSTRUCTION NO. 16

### Sherman Act Section 1 - Unreasonable Restraint of Trade - Elements

Rockfon's first claim is that Armstrong's conduct unreasonably restrained trade in violation of Section 1 of the Sherman Act.

Section 1 of the Sherman Act prohibits contracts, combinations and conspiracies that unreasonably restrain trade.  To establish a violation of Section 1 of the Sherman Act, Rockfon must prove the following, by a preponderance of the evidence:

**First**, the existence of a contract or combination between or among at least two separate entities;

**Second**, that the contract or combination unreasonably restrained trade;

**Third**, that the restraint affected interstate or foreign commerce; and,

**Fourth**, that the restraint caused Rockfon to suffer an injury to its business and property.

If you find that the evidence is not sufficient to prove any one or more of these elements, then you must find for Armstrong and against Rockfon on this claim. If you find that Rockfon has proven each of these elements by a preponderance of the evidence, then you must find for Rockfon and against Armstrong on this claim.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Sherman Act – General, Instruction 2; *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

**<u>PROPOSED INSTRUCTION NO. 17</u>**

**Sherman Act Section 2 - Monopolization - Elements**

Rockfon's second claim is that Armstrong unlawfully monopolized the U.S. market for standard acoustical ceiling tiles in violation of Section 2 of the Sherman Act.  Armstrong denies these allegations.

To prevail on its monopolization claim, Rockfon has the burden of proving each of the following elements by a preponderance of the evidence:

**First**, that the alleged market is a valid antitrust market;

**Second**, that Armstrong possessed monopoly power in that market;

**Third**, that Armstrong willfully maintained monopoly power in that market by engaging in anticompetitive conduct;

**Fourth**, that Armstrong's conduct occurred in or affected interstate and foreign commerce; and

**Fifth**, that Rockfon was injured in its business or property because of Armstrong's anticompetitive conduct.

If you find that the evidence is not sufficient to prove any one or more of these elements, then you must find for Armstrong and against Rockfon on this claim.  If you find that Rockfon has proven each of these elements by a preponderance of the evidence, then you must find for Rockfon and against Armstrong on this claim.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Monopolization – General, Instruction 1; *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

<u>**PROPOSED INSTRUCTION NO. 18**</u>

**Sherman Act Section 2 - Monopolization - Existence of Monopoly Power**

To prevail on its monopolization claim, Rockfon must prove by a preponderance of the evidence that Armstrong had monopoly power in the relevant market.   Monopoly power is the power to control prices or exclude competition in a relevant antitrust market.  More precisely, Armstrong is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time.   However, possession of monopoly power, in and of itself, is not unlawful.

The evidence presented by the parties includes evidence of Armstrong's market share, market share trends, entry and exit by other companies, and the number and size of other alleged competitors.

**Market Share**.   The first factor you should consider is Armstrong's share of the relevant market(s).  Based on the evidence you have heard about Armstrong's market share, you should determine its market share as a percentage of total sales in the relevant market(s).   Armstrong must have a significant share of the market in order to possess monopoly power.  Market share alone is not sufficient to establish monopoly power.

**Market Share Trends.**  The trend in Armstrong's market share in the valid relevant market also is something you may consider.   A market share that increases over time may strengthen an inference that a company has monopoly power, particularly where that company has a high market share.  A decreasing market share may indicate the absence of monopoly power.

**Barriers to Entry.**   You may also consider whether there are durable barriers to entry into the relevant market.   Durable barriers to entry make it difficult for new

competitors to enter the valid relevant market in a meaningful and timely way.  Barriers to entry might include intellectual property rights (such as patents or trade secrets), the large financial investment required to build a plant, specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products).

Evidence of high barriers to entry along with high market share may support an inference that Armstrong had monopoly power.  By contrast, evidence of low or no entry barriers may be evidence that Armstrong did not have monopoly power, regardless of its market share, because new competitors could enter easily if Armstrong attempted to raise prices for a substantial period of time.

**Entry and Exit by Other Companies.**  The history of entry and exit in the valid relevant market may be helpful to consider.   Entry of new competitors or expansion of existing competitors may be evidence that Armstrong lacked monopoly power.   On the other hand, departures from the market, or the failure of firms to enter the market, may support an inference that Armstrong has monopoly power.

**Number and Size of Competitors.**  You may consider whether Armstrong's competitors were capable of effectively competing.  In other words, you should evaluate whether the financial strength, market shares, and number of competitors in the valid relevant market acted as a check on Armstrong's ability to price its products.   If Armstrong's competitors were vigorous or had large or increasing market shares, this may be evidence that Armstrong lacked monopoly power.   On the other hand, if you determine that Armstrong's competitors were weak or had small or declining market shares, this may support an inference that Armstrong had monopoly power.

23

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Monopolization – General, Instructions 2, 8 and 9 (adapted); *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## <u>PROPOSED INSTRUCTION NO. 19</u>

### Sherman Act Section 2 - Monopolization - Willful Maintenance of Monopoly Power

The next element Rockfon must prove is that Armstrong willfully maintained monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, which have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. Some examples of harm to competition include increased prices, decreased production levels, and reduced quality.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. The maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, is not unlawful.

A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals — or the achievement of these goals — unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether Armstrong's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Monopolization – General, Instruction 9 (adapted); *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## PROPOSED INSTRUCTION NO. 20

### Sherman Act Section 2 - Attempted Monopolization Claim - Elements

Rockfon's third claim is that it was injured by Armstrong's alleged unlawful attempt to monopolize the market for standard acoustical ceiling tiles.   Armstrong denies these allegations.  To prevail on its claim of attempted monopolization, Rockfon has the burden of proving each of the following elements by a preponderance of the evidence:

**First**, that Armstrong engaged in anticompetitive conduct;

**Second**, that Armstrong had a specific intent to achieve monopoly power in a relevant market;

**Third**, that there was a dangerous probability that Armstrong would achieve its goal of monopoly power in the relevant market;

**Fourth**, that Armstrong's conduct occurred in or affected interstate and foreign commerce; and

**Fifth**, that Rockfon was injured in its business or property by Armstrong's anticompetitive conduct.

If you find that the evidence is not sufficient to prove any one or more of these elements, then you must find for Armstrong and against Rockfon on this claim.  If you find that Rockfon has proven each of these elements by a preponderance of the evidence, then you must find for Rockfon and against Armstrong on this claim.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Attempt to Monopolize, Instruction 1; *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## PROPOSED INSTRUCTION NO. 21

### Sherman Act Section 2 - Attempted Monopolization - Anticompetitive Conduct

It is not sufficient for Rockfon to prove that Armstrong intended to monopolize the relevant market.  Rockfon must also show that Armstrong engaged in anticompetitive conduct, coupled with intent to monopolize and a dangerous probability that Defendant would succeed. Generally, a firm engages in anticompetitive conduct when it attempts to exclude rivals without an efficiency-enhancing justification for its conduct.

As noted above, Armstrong contends that its challenged exclusivity agreements with distributors create benefits for the market that serve as procompetitive justifications for the agreements.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Monopolization – General, Instruction 10 (adapted); ABA Model Jury Instructions in Civil Antitrust Cases, Attempt to Monopolize, Instruction 15; *Premier Electrical Construction Co. v. Nat'l Electrical Contractors Assoc., Inc*., 814 F.2d 358 (7th Cir. 1987) (affirming finding that association's use of union to increase its rivals' costs of doing business was anticompetitive conduct); *Le Page's Inc. v. 3M*, 1997 WL 734005 (D. Del. Nov. 14, 1997) (quoting *Eastman Kodak Co. v. Image Tech. Servs. Inc.*, 504 U.S. 451, 488 (1992) (Scalia, J., dissenting)) ("Where a defendant maintains substantial market power, his activities are examined through a special lens: Behavior that might otherwise not be of concern to the antitrust laws -- or that might be viewed as procompetitive -- can take on an exclusionary connotation when practiced by a monopolist."); *Cont'l Ore Co. v. Union Carbide & Carbon Corp*., 370 U.S. 690, 699 (1962) (the courts must look to the monopolist's conduct taken as a whole rather than considering each aspect in isolation); *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## **PROPOSED INSTRUCTION NO. 22**

### **Sherman Act Section 2 - Attempted Monopolization - Specific Intent**

I have already instructed you as to the relevant market and anticompetitive conduct, and you should follow those instructions in analyzing Rockfon's attempted monopolization claim. I will now discuss specific intent. In order to prevail on its claim for attempted monopolization, Rockfon must prove that Armstrong had a specific intent to monopolize a relevant market.

There are several ways in which Rockfon may prove that Armstrong had the specific intent to monopolize. There may be evidence of direct statements of Armstrong's intent to obtain a monopoly in the relevant market. Such proof of specific intent may be established by documents prepared by responsible officers or employees of Armstrong at or about the time of the conduct in question or by testimony concerning statements made by responsible officers or employees of Armstrong. You must be careful, however, to distinguish between Armstrong's intent to compete aggressively (which is lawful), which may be accompanied by aggressive language, and a true intent to acquire monopoly power by using anticompetitive means.

Even if you decided that the evidence does not prove directly that Armstrong actually intended to obtain a monopoly, specific intent may be inferred from what Armstrong did. For example, if the evidence shows that Armstrong lacked a legitimate business justification and the natural and probable consequence of Armstrong's conduct in the relevant market was to give Armstrong control over prices and to exclude or destroy competition, and that this was plainly foreseeable by Armstrong, then you may (but are not required to) infer that Armstrong specifically intended to acquire monopoly power.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Attempt to Monopolize, Instruction 3; *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## PROPOSED INSTRUCTION NO. 23

**Sherman Act Section 2 - Attempted Monopolization - Dangerous Probability of Success**

If you find that Armstrong had the specific intent to achieve a monopoly and engaged in significant anticompetitive conduct, you also must determine if the evidence shows the next element of Rockfon's attempt to monopolize claim: namely, that there was a dangerous probability that Armstrong would succeed in achieving monopoly power if it continued to engage in the same or similar conduct.

In determining whether there was a dangerous probability that Armstrong would acquire the ability to control price in the markets, you should consider such factors as:

- Armstrong's market share;

- The trend in Armstrong's market share;

- Whether the barriers to entry into the market made it difficult for competitors to enter the market;

- The strength of the competition;

- The probable development of the industry; and

- The nature and likely effect of any anticompetitive conduct on Armstrong's share of the market.

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that Armstrong would ultimately acquire monopoly power.

**Authority For Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Attempt to Monopolize, Instruction 4 (adapted); ABA Section of Antitrust Law, *Antitrust Law Developments (Sixth)*, Vol. 1, pp. 312-14 and cases collected at notes 597-602; *Tasty Baking Co. v. Ralston Purina, Inc.*, 653 F. Supp. 1250, 1268 (E.D. Pa. 1987) (level of market power required to support a finding of attempted monopolization is generally less than the level required to support a finding of actual

monopolization); *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## PROPOSED INSTRUCTION NO. 24

### Clayton Act Section 3 Claim - Elements

Rockfon's fourth claim is under Section 3 of the Clayton Act. Rockfon alleges that Armstrong used exclusive dealing arrangements with distributors to foreclose competition in a substantial portion of the relevant markets, and that Rockfon was injured as a result of these exclusive dealing arrangements. To succeed on this claim, Rockfon must prove the following four elements by a preponderance of the evidence:

**First**, that Armstrong sold standard acoustical ceiling tiles, or entered into contracts for the sale of standard acoustical ceiling tiles, for use, consumption, or resale in the United States;

**Second**, that in its sales or contracts for standard acoustical ceiling tiles, Armstrong established an agreement or understanding that the purchaser would not directly purchase, advertise, or promote Rockfon ceiling tile products;

**Third**, the effect of such sales, or contracts for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in a relevant market;

**Fourth**, Rockfon was injured in its business or property as a proximate result of Armstrong's conduct.

Rockfon claims that, among other things, Armstrong pressured and/or threatened distributors to enter into written or verbal exclusivity agreements with Armstrong, whereby the distributors were prohibited from promoting, carrying or selling Rockfon ceiling tile products specifically. Rockfon further alleges that these exclusivity arrangements blocked Rockfon's access to standard acoustical ceiling tile end-users.

You need not find that the challenged agreements contained a specific, express agreement to use or purchase only Armstrong's products to conclude that said agreements constitute exclusive dealing arrangements because a condition, agreement or understanding may be either expressly stated or inferred from the circumstances.

You should not assume that a contract is illegal merely because it is exclusive.  Exclusive agreements, in and of themselves, do not violate the antitrust laws.  It is only when a monopolist employs exclusive dealing arrangements that the antitrust laws are implicated.  Thus, there is no challenge to Rockfon's distribution agreements in this case, because Rockfon is not a monopolist.

Armstrong's agreements may be found to be exclusive dealing arrangements if they had the practical effect of substantially preventing the purchase of Rockfon's goods.  An agreement may be an exclusive dealing arrangement even if it does not require a 100% commitment to deal only in the seller's products.  You also may find that the dealing arrangement substantially lessened competition if you find that competition has been foreclosed in a substantial share of the line of commerce affected.

If you find that the evidence is not sufficient to prove any one or more of these elements, then you must find for Armstrong and against Rockfon on this claim.  If you find that Rockfon has proven each of these elements by a preponderance of the evidence, then you must find for Rockfon and against Armstrong on this claim.

**Authority For Instruction:**

*ZF Meritor LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012) *cert. denied*, 133 S. Ct. 2025 (2013); *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

## PROPOSED INSTRUCTION NO. 25

**Clayton Act Section 3 Claim - Use, Consumption or Resale in the United States**

As to the first element of Rockfon' s Clayton Act Section 3 claim, you must determine whether Armstrong sold standard acoustical ceiling tiles, and entered into contracts for the sale of standard acoustical ceiling tiles, for use, consumption or resale in the United States.

**Authority For Instruction:**

*GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions).

<u>**PROPOSED INSTRUCTION NO. 26**</u>

**Injury and Causation**

If you find that Armstrong violated Section 1 or 2 of the Sherman Act, or Section 3 of the Clayton Act, then you must decide if Rockfon has been injured by Armstrong's conduct and, if so, whether Rockfon is entitled to recover damages from Armstrong for that injury.

Rockfon is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation:

**First**, that Rockfon was in fact injured as a result of Armstrong's alleged violation of the antitrust laws;

**Second**, that Armstrong's alleged illegal conduct was a material cause of Rockfon's injury; and

**Third**, that Rockfon's injuries are injuries of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Rockfon to establish that it is entitled to recover damages, Rockfon must prove that it was injured as a result of Armstrong's violation of the antitrust laws. Proving causation does not require Rockfon to prove the precise dollar value of its injury. It requires only that Rockfon prove that it was in fact injured by Armstrong's alleged antitrust violation. If you find that Rockfon has established that it was in fact injured, you may then consider the amount of Rockfon's damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Rockfon has established that it was in fact injured.

Rockfon must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that Armstrong's alleged illegal conduct was a material cause of Rockfon's injury.  This means that Rockfon must prove that some damage occurred to it as a result of Armstrong's alleged antitrust violation and not some other cause.  Rockfon is not required to prove that the accused conduct was the sole cause of its injury; nor need Rockfon eliminate all other possible causes of injury.  It is enough if Rockfon has proven that the alleged antitrust violation materially contributed, or substantially contributed, to Rockfon's injury, even if other factors also contributed.

Finally, Rockfon must establish that its injury is the type of injury that the antitrust laws were intended to prevent.  This is sometimes referred to as "antitrust injury."  If Rockfon's injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then Rockfon's injuries are antitrust injuries.  As an example of antitrust injury, suppose an established manufacturer that long held a dominant position is beginning to lose market share to a young rival.  A set of strategically-planned exclusive dealing arrangements may slow the new entrant's expansion by forcing it to develop alternative outlets for its product, or rely on (at least temporarily), inferior or more expensive outlets.  Antitrust injury results from the delay the dominant firm imposes on the new rival's growth.

**Authority for Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Causation and Damages, Instruction 1 (adapted); *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions) (adapted) (Antitrust Instruction 42).

## PROPOSED INSTRUCTION NO. 27

### Definition of Business or Property

Rockfon must establish that the injury it claims to have suffered was an injury to its "business or property."   The term "business" includes any commercial interest or venture, and you are instructed that Rockfon has been injured in its business if you find that it has suffered injury to any of its commercial interests or enterprises as a result of Armstrong's alleged antitrust violation.   The term "property" includes anything of value Rockfon owns, possesses, or in which Rockfon has a protectable legal interest.   You are instructed that Rockfon has been injured in its property if you find that anything of value that it owns, possesses, or has a legal interest in has been damaged as a result of Armstrong's alleged antitrust violation.   You are further instructed to find that Rockfon has been injured in its "business or property" if you find it has lost money as a result of Armstrong's alleged antitrust violation.

**Authority for Instruction:**

*GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions) (adapted) (Instruction 43).

## PROPOSED INSTRUCTION NO. 28

### Antitrust Damages - Purpose

If you find that Armstrong violated the antitrust laws and that this violation caused injury to Rockfon, then you must determine the amount of damages, if any, that Rockfon is entitled to recover.  The law provides that Rockfon should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

The purpose of awarding damages in an antitrust case is to put the injured party as near as possible to the position in which it would have been if the alleged antitrust violation had not occurred.  The law does not permit you to award damages to punish a wrongdoer – what we sometimes refer to as punitive damages – or to deter defendants from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation. You are also not permitted to award to Rockfon an amount for attorneys' fees or the cost of maintaining this lawsuit.  Antitrust damages are compensatory only.  In other words, they are designed to compensate Rockfon for the particular injuries it suffered as a result of the alleged violation of the law.

**Authority for Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Damages, Instruction 2; *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions) (adapted) (Antitrust Instruction 44).

## PROPOSED INSTRUCTION NO. 29

### Antitrust Damages - Calculation

Damages may not be based on guesswork or speculation.  If you find that a damages calculation cannot be based on evidence and reasonable inference, and instead can only be reached through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages.  It may be difficult for you to determine the precise amount of damages suffered by Rockfon.  Rockfon is given some latitude in calculating damages, so long as its theory is not wholly speculative.  You are permitted to make a just and reasonable estimate of the damages.  So long as there is a reasonable basis in the evidence for a damages award, Rockfon should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty.

If you find that Rockfon has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

**Authority for Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Damages, Instruction 3 (adapted); *Le Page's Inc. v. 3M*, 324 F.3d 141, 166 (3rd Cir. 2003) ("[i]n constructing a hypothetical world free of the defendants' exclusionary activities, the plaintiffs are given some latitude in calculating damages, so long as their theory is not wholly speculative") (quoting *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 812 (3d Cir.1984)); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123-24 (1969) (citations omitted) ("[T]he jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances, 'juries are allowed to act on probable and inferential as well as direct and positive proof.' Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain. Failure to apply it would mean that the more grievous the wrong done, the less likelihood there would be of a recovery.'").

## PROPOSED INSTRUCTION NO. 30

### Antitrust Damages - Lost Profits

Rockfon claims that it was harmed because it lost profits as a result of Armstrong's alleged antitrust violation.   If you find that Armstrong committed an antitrust violation and that this violation caused injury to Rockfon, you now must calculate the profits, if any, that Rockfon lost as a result of Armstrong's antitrust violation.    To calculate lost profits, you must calculate net profit: the amount by which Rockfon's gross revenues would have exceeded all of the costs and expenses that would have been necessary to produce those revenues.

**Authority for Instruction:**

*GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions) (adapted) (Instruction 46).

## PROPOSED INSTRUCTION NO. 31

### Causation and Disaggregation

If you find that Armstrong violated the antitrust laws and that Rockfon was injured by that violation, Rockfon is entitled to recover for such injury that was the direct result or likely consequence of the illegal acts of Armstrong.   Rockfon bears the burden of showing that its injuries were caused by Armstrong's antitrust violation, as opposed to any other factors.   If you find that Rockfon's alleged injuries were caused in part by Armstrong's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of Rockfon's alleged injuries that was caused by Armstrong's alleged antitrust violation.

Rockfon claims that it suffered injury because it lost sales and profits as a result of Armstrong's exclusivity arrangements and the "No Rockfon" clause.   Armstrong contends that any profits or sales lost by Rockfon occurred as a result of other factors that have nothing to do with the exclusivity arrangements at issue.   Rockfon only may recover for damages caused by the alleged antitrust violation.

**Authority for Instruction:**

ABA Model Jury Instructions in Civil Antitrust Cases, Causation and Damages, Instruction 1 (adapted); *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions) (adapted) (Antitrust Instruction 47).

## PROPOSED INSTRUCTION NO. 32

### Damages - Period

In this case, the antitrust laws do not allow for recovery of damages for any injuries sustained by Rockfon prior to September 1, 2013.  If you find that Rockfon suffered injuries spanning both before and after September 1, 2013, then you must apportion the damages between the two periods and you may award damages only for the portion of the injuries suffered after September 1, 2013.

When apportioning the damages between the two periods, you should be guided by the same principles I explained to you earlier.   That is, you are permitted to make just and reasonable estimates in apportioning Rockfon's alleged damages.   You are not required to apportion damages with absolute mathematical certainty or precision.   However, the apportionment of damages must have a reasonable basis in the evidence.

**Authority for Instruction:**

*GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016) (Final Jury Instructions) (adapted) (Antitrust Instruction 48).

Dated: March 11, 2019                Respectfully submitted,

                                     FARNAN LLP

                                     /s/ Michael J. Farnan
                                     Joseph J. Farnan, Jr. (Bar No. 100245)
                                     Brian E. Farnan (Bar No. 4089)
                                     Michael J. Farnan (Bar No. 5165)
                                     919 North Market Street
                                     12th Floor
                                     Wilmington, DE 19801
                                     Tel:  (302) 777-0300
                                     Fax:  (302) 777-0301
                                     farnan@farnanlaw.com
                                     bfarnan@farnanlaw.com
                                     mfarnan@farnanlaw.com

                                     Jeffrey S. Patterson (admitted *pro hac vice*)
                                     Michael R. Murphy (admitted *pro hac vice*)
                                     Morgan T. Nickerson (admitted *pro hac vice*)
                                     Christopher S. Finnerty (admitted *pro hac vice*)
                                     Emily E. Gianetta (admitted *pro hac vice*)
                                     Jack S. Brodsky (admitted *pro hac vice*)
                                     K&L GATES LLP
                                     State Street Financial Center,
                                     One Lincoln Street
                                     Boston, MA 02111-2950
                                     (617) 261-3100
                                     (617) 261-3175
                                     jeffrey.patterson@klgates.com
                                     michael.r.murphy@klgates.com
                                     morgan.nickerson@klgates.com
                                     chris.finnerty@klgates.com
                                     emily.gianetta@klgates.com
                                     jack.brodsky@klgates.com

                                     *Counsel for Plaintiff ROXUL USA, Inc.*