**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROXUL USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 17-cv-1258-MAK |
| v. | ) | |
| | ) | |
| ARMSTRONG WORLD INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF ROXUL USA, INC.'S OBJECTIONS TO DEFENDANT'S PROPOSED JURY INSTRUCTIONS**

Pursuant to the Court's March 4, 2019 Scheduling Order (D.I. 271) and the Court's Policies & Procedures (Jan. 2019), Plaintiff Roxul USA, Inc. d/b/a Rockfon ("Rockfon" or "Plaintiff"), by and through its undersigned counsel, hereby serves its Objections to Defendant Armstrong World Industries, Inc.'s Proposed Jury Instructions (D.I. 293). Rockfon requests that the Court charge the jury in accordance with Rockfon's set of Proposed Jury Instructions submitted to the Court (D.I. 298). Rockfon does not waive any objection to Defendant's Proposed Jury Instructions or the final instructions charged to the jury. As to each of Defendant's specific instructions, Rockfon's objections are set forth below.

**Defendant's Proposed Instruction No. 1 (The Parties' Contentions).** Rockfon does not object to Defendant's Proposed Instruction No. 1. While Rockfon requests that the Court adopt the language set forth in Rockfon's Proposed Instruction No. 1, it acknowledges that both parties' proposed instructions are acceptable.

**Defendant's Proposed Instruction No. 2 (The Purpose of the Antitrust Laws).** Rockfon does not object to Defendant's Proposed Instruction No. 2. While Rockfon requests

that the Court adopt the language set forth in Rockfon's Proposed Instruction No. 2, it acknowledges that both parties' proposed instructions are acceptable.

**Defendant's Proposed Instruction No. 3 (Liability Period).** Rockfon objects to Defendant's Proposed Instruction No. 3 as it is confusing and will likely mislead the jury. Defendant's Proposed Instruction No. 3 improperly applies the statute of limitations period to all conduct prior to September 1, 2013. While the statute of limitations period may run to September 1, 2013, this does not bar Rockfon from asserting its claims regarding agreements entered into prior to September 1, 2013 if they were in effect during the statutory period. Rockfon is entitled to and does challenge all Armstrong agreements that were in place during the relevant time period regardless of when they were entered into. *See, e.g.*, *Aurora Enterprises v. Nat'l Broad. Co.*,, 688 F.2d 689, 694 (9th Cir. 1982) (recognizing that active enforcement of an illegal contract by an antitrust defendant will restart statute of limitations period); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 US 321, 338-39 (1971). As a result, any instruction that informs the jury that they may not consider the agreements that were executed prior to 2013 would unnecessarily confuse the jury and improperly state the law.

**Defendant's Proposed Instruction No. 4 (Exclusive Dealing - In General).** Rockfon objects to the entirety of Defendant's Proposed Instruction No. 4 as it mischaracterizes Rockfon's claims in this case, incorrectly states the law of a § 3 Clayton Act claim, and improperly dubs all of Rockfon's claims as "exclusive dealing claims." As an initial matter, § 3 Clayton Act, 15 U.S.C. § 14, entitled "Sale, etc., on agreement not to use goods of competitor" is not based upon "exclusive dealing." Instead, the statutory language prohibits a sale of a good premised on an agreement not to sell the good of **a** competing manufacturer, not **all** competing manufacturers. There is no "exclusivity" requirement in the statute. Therefore, it is legally

incorrect and misleading to the jury to provide an exclusive dealing instruction as a "common element" of all of Rockfon's claims. Moreover, Defendant's Proposed Instruction No. 4 makes no reference of *de facto* written or verbal exclusive dealing arrangements, which may take the form of a requirements contract that, in effect, commits the buyer to purchase all, or a substantial share, of its requirements of specific products or services from the supplier.

Further, Rockfon objects to Defendant's Proposed Instruction No. 4 to the extent that it is prejudicial insofar as it states that "partial exclusive dealing contracts… are generally lawful because market foreclosure is only partial, and competing sellers are not prevented from selling to the buyer." Additionally, the statement "[e]xclusive dealing agreements… generally pose little threat to competition" is prejudicial as it is incorrect in that it omits the fact that exclusive dealing agreements are scrutinized when practiced by a monopolist. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 284 (3d. Cir. 2012) (""[e]xclusive dealing can have adverse economic consequences by allowing one supplier of goods or services unreasonably to deprive other suppliers of a market for their goods[.]"); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005) ("Behavior that otherwise might comply with antitrust law may be impermissibly exclusionary when practiced by a monopolist.").

Further, Rockfon objects to Defendant's Proposed Instruction No. 4 to the extent that it should be included in Defendant's Proposed Instruction No. 13 as it addresses the weighing of pro- versus anti-competitive qualities of exclusive dealing rather than being a "common element."

Further, Rockfon objects to Defendant's Proposed Instruction No. 4 as it is confusing and will likely mislead the jury. Defendant's Proposed Instruction contains language that implies

that "exclusive dealing" is an element of Rockfon's claims here, which it is not (see § 3 Clayton Act, 15 U.S.C. § 14 discussion above).

**Defendant's Proposed Instruction No. 6 (Common Element: Interstate Commerce).** Rockfon does not object to Defendant's Proposed Instruction No. 6. Rockfon requests that the Court adopt Defendant's language set forth in Proposed Instruction No. 6 instead of Rockfon's Proposed Instruction No. 5 as it appears this is now an uncontested issue.

**Defendant's Proposed Instruction No. 7 (Common Element: Relevant Market in General).** Rockfon does not object to Defendant's Proposed Instruction No. 7. Rockfon requests that the Court adopt Defendant's language set forth in Proposed Instruction No. 7 instead of Rockfon's Proposed Instruction Nos. 6-8 as it appears that this is now an uncontested issue.

**Defendant's Proposed Instruction No. 8 (Common Concept: Market Power).** Rockfon objects to only the last paragraph of Defendant's Proposed Instruction No. 8 as argumentative, prejudicial, and will likely mislead the jury. As an initial matter, Armstrong has added the word "significant" as a qualifier to market power. There is no such requirement that market power be "significant."[1] *See, e.g., Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 922 F. Supp. 1055, 1060 (E.D. Pa. 1996) ("[I]n order to state a Sherman Act claim under either § 1 or § 2, a plaintiff must identify the relevant product and geographic markets and allege *that the defendant exercises market power within those markets.*" (citing *Brader v. Allegheny General Hosp.*, 64 F.3d 869, 877 (3d Cir. 1995)) (emphasis added).

[1] The reference to "significant market power" is used in Defendant's Proposed Instruction Nos. 17 and 23. Rockfon repeats the above objection in response to each instance or use of the phrase "significant market power."

Further, Rockfon objects to the final paragraph of the instruction as an incorrect statement of law. Armstrong proposes language that states that "[i]f Armstrong does not possess significant market power, then there cannot be substantial harm to competition from the challenged terms of Armstrong's distribution agreements and you must find in Armstrong's favor on all of Rockfon's claims." However, this last paragraph must be omitted as § 3 of the Clayton Act provides: "It shall be unlawful for any person engaged in commerce… to contract for sale of goods… on the condition, agreement, or understanding that the… purchaser thereof shall not use or deal in the goods… of a competitor or competitors of the… seller, where the effect of such… contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce. 15 U.S.C. § 14." Clayton Act § 3 requires a showing that the complained of exclusionary conduct either "substantially lessen competition *or* tend to create a monopoly." (emphasis added). Accordingly, Rockfon may succeed on its Clayton Act claim without showing market (or monopoly) power and Armstrong's proposed final paragraph of the instruction incorrectly states the law and must be omitted.

**Defendant's Proposed Instruction No. 9 (Common Concept: Rule of Reason):** Rockfon objects to Defendant's Proposed Instruction No. 9. First, Rockfon objects to Defendant's statement in the first paragraph that "these terms amount to *exclusive dealing*" (emphasis added). Rockfon contends that the correct statement should read: "these terms amount to *unlawful restraints of trade*" as this is the properly terminology and is consistent with the terminology used through the remainder of the instruction.

Further, Rockfon objects to Defendant's Proposed Instruction No. 9 as the following is an incorrect statement of the law: "you must first determine whether Rockfon has proven that the

challenged terms of Armstrong's distribution agreements *substantially foreclosed competition*" (emphasis added). The relevant inquiry is not whether Defendant's conduct substantially foreclosed the market; rather "the primary antitrust concern with exclusive dealing arrangements is that they may be used by a monopolist to strengthen its position, *which may ultimately harm competition.*" *ZF Meritor*, 696 F.3d at 270. Additionally, the Court explicitly stated: "Rockfon need not prove 'total foreclosure' from the market but must show Armstrong's practices 'bar a substantial number of rivals or severely restrict the market's ambit.'" Memorandum, at 12 (D.I. 275) (quoting *Dentsply*, 399 F.3d at 191).

Further, Rockfon objects to Defendant's Proposed Instruction No. 9 as it is incomplete. Defendant's Proposed Instruction No. 9 must instruct the jury that should they find Defendant's use of exclusivity and the "No Rockfon" Clause to be a naked restraint on competition, the rule of reason analysis is unnecessary and the jury must find for Rockfon. *See United States v. Microsoft Corp.*, 253 F.3d 34, 73 (D.C. Cir. 2001) ("[H]aving offered no procompetitive justification for its exclusive dealing arrangements, we hold that those arrangements violate § 2 of the Sherman Act."); *Brown v. Pro Football, Inc.*, 812 F. Supp. 237, 238 (D.D.C. 1992) ("With no relevant pro-competitive virtues left to balance the clear anticompetitive evils, the court determined that the salary restraints were violative of the antitrust laws and ordered summary judgment on liability for the plaintiffs."); *Smith v. Pro Football, Inc.*, 593 F.2d 1173, 1189 (D.D.C. 1978) (explaining that because the restraint at issue "had severe anticompetitive effects and no demonstrated procompetitive virtues, we hold that it unreasonably restrained trade in violation of § 1 of The Sherman Act").

**Defendant's Proposed Instruction No. 10 (Common Concept: Foreclosure):** Rockfon objects to Defendant's Proposed Instruction No. 10 as the following is an incorrect statement of

the law: "Foreclosure of 40 to 50 percent of the market is usually required to establish that the alleged conduct foreclosed competition." Courts across the country have found substantial foreclosure where market foreclosure is less than 40 to 50 percent. *See Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*,373 F.3d 57, 68 (1st Cir. 2004) (30 to 40 percent); *LePage's Inc. v. 3M*, 324 F.3d 141, 159 (3d Cir. 2003); *Microsoft*, 253 F.3d at 58. Courts have repeatedly found antitrust violations even in the absence of substantial foreclosure altogether. *See United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) (finding liability despite no foreclosure and access to all consumers through free Internet downloads or CD-ROM mailings); *United States v. Visa USA, Inc.*, 163 F. Supp. 2d 322 (S.D.N.Y. 2001), aff'd 344 F.3d 229 (2d. Cir. 2003) (finding liability although competitors could reach all potential cardholders through mailings, but the exclusion from bank issuers raised the price of network services to banks); *Avery Dennison Corp. v. ACCO Brands, Inc.*, 2000-1 Trade Cas. (CCH) ¶ 72, 882 (C.D. Cal. 2000) (denying summary disposition as the restraints at issue enhanced and protected the defendants' market power, despite minimal foreclosure); *R.J. Reynolds Tobacco Co. v. Phillip Morris Inc.*, 60 F. Supp. 2d 502 (M.D.N.C. 1999) (granting preliminary injunction after finding defendant used market power to gain a significant competitive advantage despite minimal foreclosure); *see also* Jonathan M. Jacobson, *Exclusive Dealing, "Foreclosure," and Consumer Harm*, 70 ANTITRUST L.J. 311, 311 (2002) (arguing against the use of substantial foreclosure percentage as a proxy for antitrust liability).

Further, Rockfon objects to Defendant's Proposed Instruction No. 10 as the following is an over-simplification and incorrect statement of the law: "[if] there are sufficient alternative ways for competing suppliers to effectively reach end users with their products, then a restraint does not foreclose competitors' access to the market." The Third Circuit has repeatedly made

clear that the mere *existence* of alternative channels of distribution does not negate foreclosure — a manufacturer may be foreclosed from the relevant market despite the existence of alternative means of distribution where such channels are not viable or effective. *See, e.g., Dentsply*, 399 F.3d at 193 ("That some manufacturers resort to direct sales and are even able to stay in business by selling directly is insufficient proof that direct selling is an effective means of competition. The proper inquiry is not whether direct sales enable a competitor to 'survive' but rather *whether direct selling 'poses a real threat' to defendant's monopoly*." (citing *Microsoft*, 253 F.3d at 71) (emphasis added)); *ZF Meritor*, 696 F. 3d at 287 (holding that excluding rivals from promotion in dealer's databook sufficed to prove anticompetitive effects, even though the rival "remained free to market directly to truck buyers," because "buyers were far more likely to select a product listed in the data book."); *GN Netcom, Inc. v. Plantronics, Inc.*, C.A. No. 12-1318-LPS, 2017 WL 4416525, at *3 (D. Del. Sept. 29, 2017). Ultimately, "[t]he mere existence of other avenues of distribution is insufficient without an *assessment* of their overall significance to the market." *Dentsply*, 399 F.3d at 196 (emphasis added); *see also GN Netcom, Inc. v. Plantronics, Inc.*, 2017 WL 4416525, at *3. For the same reason, the following statement is an incorrect statement of the law and must be stricken from the instruction: "Competition is not foreclosed if competitors have significant access to viable distribution channels but merely lack access to the best or more efficient distributors due to Armstrong's distribution agreements."

Further, Rockfon objects to Defendant's Proposed Instruction No. 10 as the following is an incorrect statement of the law: "Whether the buyer in an exclusive dealing contract is an intermediary or an end user is an important distinction in evaluating whether the buyer's sales were foreclosed to competition." Armstrong relies upon *Omega Envtl. Inc. v. Gilbarco, Inc.*, 127 F.3d 1157 (9th Cir. 1997) for this language although the proposition has been specifically

rejected and distinguished by either the Third Circuit or the District Court in *Dentsply*. *See Dentsply Int'l, Inc.*, 399 F.3d at 194 n.2; *U.S. v. Dentsply Int'l, Inc.*, C.A. No. 99-255-SLR, 2001 WL 624807, at *7-8 (D. Del. Mar. 30, 2001). The Court here, too, explicitly rejected this argument when Armstrong presented it in summary judgment. *See* Memorandum, at 13-14 (D.I. 275)

Further, Rockfon objects to Defendant's Proposed Instruction No. 10 as the following is argumentative and not the law of this Circuit, as discussed above: "If end users are free to switch to a different product in the marketplace but choose not to do so, then competition has not been foreclosed. In circumstances where an architect is designating a product on behalf of the end user, competition for specification by that architect is classic competition on the merits of a product." Moreover, the Court specifically commenting on architects impacts the balancing act the jury must engage in when considering the evidence under the rule of reason. The Court commenting on any specific evidence in the case rather than simply providing the legal framework for the law would therefore be prejudicial and improper.

Further, Rockfon objects to Defendant's Proposed Instruction No. 10 as the following is an incorrect statement of the law: "you should not consider foreclosure caused by other competitors in the market or by other Armstrong conduct besides the challenged terms of its distribution agreements." This proposition has been directly rejected by this Court, the Areeda Antitrust Treatise, and the Supreme Court. *See* Memorandum, at 6 (D.I. 274) ("[W]e find the Supreme Court approved aggregation in the context of antitrust laws."); Areeda, VIII Antitrust Law para 1604k3, pg. 78 (1989) (legality of a restraint under the rule of reason usually depends upon market circumstances and cumulative market foreclosure must be considered if it affects a

restraint's threat to competition); *Standard Oil & Standard Stations v. United States*, 337 U.S. 293, 295, 309 (1949); *FTC v. Motion Picture Adver. Serv*, 344 U.S. 392, 395 (1953).

Further, Rockfon objects to Defendant's Proposed Instruction No. 10 to the extent that it is argumentative and prejudicial, insofar as it states that: "a defendant's challenged ability to operate at a lower cost is not anticompetitive. Running a business with greater economic efficiency is to be encouraged, because that often translates to enhanced competition among market players, better products, and lower prices for consumers." There is no evidence of this occurring in this case so the jury need not be confused by this instruction.

Further, Rockfon objects to Defendant's Proposed Instruction No. 10 as it is incomplete. Defendant's Proposed Instruction No. 10 must include the following hypothetical adopted by the Third Circuit to demonstrate that foreclosure through impeding a rival results in consumer harm: "For example, suppose an established manufacturer that long held a dominant position is beginning to lose market share to a young rival. A set of strategically-planned exclusive dealing arrangements may slow the new entrant's expansion by forcing it to develop alternative outlets for its product, or rely on (at least temporarily), inferior or more expensive outlets. Consumer injury results from the delay the dominant firm imposes on the new rival's growth." *See ZF Meritor*, 696 F. 3d at 271. Absent this hypothetical, the jury is unaware of the fact that impeding a rival's growth may result in consumer harm.

**Defendant's Proposed Instruction No. 12[2] (Common Concept: Rule of Reason - Proof of Competitive Harm).** Rockfon objects to Defendant's Proposed Instruction No. 12 as the following is an incorrect statement of the law: "the challenged terms of Armstrong's distribution agreements *substantially foreclosed competition* in the relevant market" (emphasis

---

[2] Defendants do not provide a Proposed Jury Instruction No. 11.

added). The relevant inquiry is not whether Defendant's conduct substantially foreclosed the market; rather "the primary antitrust concern with exclusive dealing arrangements is that they may be used by a monopolist to strengthen its position, *which may ultimately harm competition.*" *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 270 (3d. Cir. 2012). Therefore, Rockfon proposes that the word "foreclose" be replaced with "harm."

Rockfon objects to Defendant's Proposed Instruction No. 12 as the following is argumentative and an incorrect statement of the law: "You may not conclude that rising prices are proof of competitive injury unless there is also proof that output was restricted or that prices were above a competitive level, because rising prices could be equally consistent with growing product demand, and a firm's comparatively high prices may simply reflect a superior product." Decreased competition and high consumer prices are exactly the type of harm that the antitrust laws are designed to prevent. *See Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 385 (3d Cir. 2005) ("[P]rohibitively high consumer prices resulting from allegedly monopolistic behavior [] is the type the antitrust laws are designed to redress.") (*citing Town Sound & Custom Tops*, 959 F.2d at 486 (explaining antitrust injury)); *see also U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626-28 (7th Cir. 2003) (same). Higher prices are but one factor a jury may consider in its balancing act and it would be an incorrect statement of law to state that the jury **cannot** consider higher prices unless they also find restricted output, above demand pricing, etc.

Further, Rockfon objects to Defendant's Proposed Instruction No. 12 as it is incomplete. Defendant's Proposed Instruction No. 12 must include the following hypothetical adopted by the Third Circuit: "For example, suppose an established manufacturer that long held a dominant position is beginning to lose market share to a young rival. A set of strategically-planned exclusive dealing arrangements may slow the new entrant's expansion by forcing it to develop

alternative outlets for its product, or rely on (at least temporarily), inferior or more expensive outlets. Consumer injury results from the delay the dominant firm imposes on the new rival's growth." *See ZF Meritor*, 696 F. 3d at 271.

**Defendant's Proposed Instruction No. 16 (Sherman Act: Monopolization - Elements).** Rockfon does not object to Defendant's Proposed Instruction No. 16 given Defendant's Proposed Instruction Nos. 6 and 7.

**Defendant's Proposed Instruction No. 17 (Sherman Act Section 2: Monopolization - Existence of Monopoly Power).** Rockfon objects to Defendant's Proposed Instruction No. 17 to the extent that it is confusing and will likely mislead the jury. Defendant's Proposed Instruction No. 17 states that Rockfon "must prove" and "has the burden of proving" Armstrong's ability to raise or maintain high prices, restrict output, maintain high prices for a significant period of time, etc. While these are factors that a jury may consider in assessing monopoly power, they are not separate and distinct elements of a Sherman Act § 2 claim that Rockfon "must prove" as the proposed instruction is written.

Rockfon objects to Defendant's Proposed Instruction No. 17 as the following is prejudicial and unhelpful to the jury (as the evidence is undisputed that Defendant has between 55-60% market share) and an incorrect statement of the law: "a market share of s*ignificantly larger than 55%* is generally required to establish that a defendant has monopoly power." (emphasis added). The Third Circuit explained that "[a] less than predominant share of the market, combined with other relevant factors may suffice to demonstrate monopoly power." *Fineman v. Armstrong World Indus.*, 980 F.2d 171, 203 (3d Cir. 1992). Accordingly, the proposed instruction does not comport with controlling law.

Rockfon objects to Defendant's Proposed Instruction No. 17 as the following is an incorrect, unsupported statement of the law: "A *stable* or decreasing market share may indicate the absence of monopoly power." (emphasis added). This is plainly false, as a "stable" 90% market share would undeniably be sufficient to demonstrate monopoly power.

Rockfon objects to Defendant's Proposed Instruction No. 17 as the following is argumentative and an incorrect statement of the law: "If you conclude that there are no significant durable barriers to entry into the relevant market, then you *must* conclude that Armstrong does not possess monopoly power…." (emphasis added). The Third Circuit has explained that barriers to entry are one of several factors to consider in performing a monopoly power analysis, none of which are dispositive. *Fineman*, 980 F.2d at 202. For the same reason, the following is an incorrect statement of the law: "Rockfon *must* show that existing competitors lack the capability to increase their output in the short run." (emphasis added).

Further, Rockfon objects to Defendants Proposed Instruction No. 17 as the following is an incorrect statement of the law: "If you find that Armstrong does not have monopoly power, then you must find for Armstrong and against Rockfon on this claim." Section 2 of the Sherman Act also proscribes "attempt[s] to monopolize," which does not require proof of monopoly power.

**<u>Defendant's Proposed Instruction No. 18 (Sherman Act Section 2: Monopolization - Willful Maintenance of Monopoly Power).</u>** Rockfon objects to Defendant's Proposed Instruction No. 18 as it is an incorrect statement of the law. Rockfon states that Rockfon's Proposed Instruction No. 19, based primarily on the ABA Model Jury Instructions in Civil Cases, Monopolization - General, Instruction 9 (adapted) presents the correct statement of the law.

**Defendant's Proposed Instruction No. 20 (Sherman Act Section 2: Attempted Monopolization - Anticompetitive Conduct).** Rockfon objects to Defendant's Proposed Instruction No. 20 as it is an incorrect statement of the law. Rockfon states that Rockfon's Proposed Instruction No. 21, based primarily on the ABA Model Jury Instructions in Civil Cases, Monopolization - General, Instruction 10 (adapted) and the ABA Model Jury Instruction in Civil Antitrust Cases, Attempt to Monopolize, Instruction 15 presents the correct statement of the law.

**Defendant's Proposed Instruction No. 21 (Sherman Act Section 2: Attempted Monopolization - Specific Intent).** Rockfon does not object to Defendant's Proposed Instruction No. 21 but states that Rockfon's Proposed Instruction No. 22 offers a clearer instruction for the jury.

**Defendant's Proposed Instruction No. 22 (Sherman Act Section 2: Attempted Monopolization - Dangerous Probability of Success).** Rockfon objects to Defendant's Proposed Instruction No. 22 as it is incomplete. Defendant's Proposed Instruction No. 22 must include the following factor: "whether the restraint targeted a new market entrant."

**Defendant's Proposed Instruction No. 23 (Sherman Act Section 1: Elements).** Rockfon objects to Defendant's Proposed Instruction No. 23 as it is confusing and will likely mislead the jury. Defendant's Proposed Instruction No. 8 charges that market power is a common element, making the inclusion of Element #3 listed in Proposed Instruction No. 23 entirely unnecessary and superfluous.

Further, Rockfon objects to Defendant's Proposed Instruction No. 23 as it is prejudicial and an incorrect statement of the law. Rockfon states that the correct elements of a Sherman

Act § 1 claim are set forth in Rockfon's Proposed Instruction No. 16, based primarily on the ABA Model Jury Instructions in Civil Antitrust Cases, Sherman Act - General, Instruction 2.

**Defendant's Proposed Instruction No. 24 (Sherman Act Section 1: Agreement Defined).** Rockfon objects to Defendant's Proposed Instruction No. 24 as it is confusing and will likely mislead the jury. Defendant's Proposed Instruction No. 24 is confusing as the jury understands the meaning of the term "agreement" as it commonly used but are unaware of terms such as "unity of purpose," "common design," and "meeting of the minds" as these are all legal terms of art.

**Defendant's Proposed Instruction No. 25 (Clayton Act Section 3: Elements).** Rockfon objects to Defendant's Proposed Instruction No. 25 as it is an incorrect statement of the law. Clayton Act § 3 elements are distinct from the Sherman Act § 1. The Third Circuit has made clear that conduct violative of Section 3 of the Sherman Act may not contravene Section 1 of the Sherman Act. Because the Clayton Act only requires that a Plaintiff prove a probability that an agreement has lessened competition, courts in this Circuit have established that exclusive dealing agreements more easily violate Section 3 of the Clayton Act than Section 1 of the Sherman Act. *See Barr Labs. v. Abbott Labs*, 978 F.2d 98, 110 (3d Cir. 1992) (holding that if an arrangement "do[es] not infringe upon the stiffer standards of anti-competitiveness under the Clayton Act, … [it] will also be lawful under the less restrictive provisions of the Sherman Act."); *see also Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1304 n.9 (9th Cir. 1982) ("[A] greater showing of anticompetitive effect is required to establish a Sherman Act violation than a section 3 Clayton Act violation in exclusive-dealing cases."). Accordingly, Rockfon requests that the Court adopt the Final Jury Instructions employed by

Chief Judge Stark in *GN Netcom, Inc. v. Plantronics, Inc.*, 12-1318-LPS (D. Del. July 2016), which is the basis for Rockfon's Proposed Instruction No. 24.

**Defendant's Proposed Instruction No. 26 (Injury and Causation).** Rockfon objects to Defendant's Proposed Instruction No. 26 as it is incomplete. Defendant's Proposed Instruction No. 26 must include the following hypothetical adopted by the Third Circuit: "For example, suppose an established manufacturer that long held a dominant position is beginning to lose market share to a young rival. A set of strategically-planned exclusive dealing arrangements may slow the new entrant's expansion by forcing it to develop alternative outlets for its product, or rely on (at least temporarily), inferior or more expensive outlets. Consumer injury results from the delay the dominant firm imposes on the new rival's growth." *See ZF Meritor*, 696 F. 3d at 271. Without this instruction, the jury is unaware that merely impeding Rockfon's progress causes consumer harm under Third Circuit law.

**Defendant's Proposed Instruction No. 29 (Antitrust Damages: Calculation).** Rockfon objects to Defendant's Proposed Instruction No. 29 as it is confusing and will likely mislead the jury. Defendant's Proposed Instruction No. 29 states: "you may not award damages for acts of third parties, including conduct of United States Gypsum Corporation ("USG")." However, as discussed *supra* in response to Defendant's Proposed Instruction No. 10, this Court, following binding Supreme Court precedent, has instructed that an antitrust plaintiff may account for the fact that USG's foreclosure exacerbated the foreclosure caused by Armstrong. *See* Memorandum, at 6 (D.I. 274); *Standard Oil*, 337 U.S. at 295; *Motion Picture Adver. Serv*, 344 U.S. at 395.

Further, Rockfon objects to Defendant's Proposed Instruction No. 29 as the following is a confusing statement: "If you find that plaintiff has failed to carry its burden of providing a

reasonable basis for determining damages, then you may not award damages." Rockfon requests that the Court adopt the language set forth in Rockfon's Proposed Instruction No. 29, which offers a clearer instruction for the jury: "If you find that Rockfon has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence."

**Defendant's Proposed Instruction No. 31 (Causation and Disaggregation).** Rockfon objects to Defendant's Proposed Instruction No. 31 as it is argumentative and prejudicial insofar as it lists eight (8) "other factors" that may have caused Rockfon to suffer lost sales or profits. Rockfon requests that the Court strike this portion of Defendant's Proposed Instruction No. 31, but should the Court allow Defendant to present potential alternative causes of Rockfon's injury, Rockfon must be permitted to present an opposing list of specific injuries that Rockfon has suffered as a result of Armstrong's distribution agreements and other conduct.

Further, Rockfon objects to Defendant's Proposed Instruction No. 31 as it is confusing and will likely mislead the jury. Defendant's Proposed Instruction No. 31 states: "[Rockfon] may not recover for damages caused by acts of third parties, including USG." However, as discussed *supra* in response to Defendant's Proposed Instruction Nos. 10 and 29, this Court, following binding Supreme Court precedent, has instructed that an antitrust plaintiff may account for the fact that USG's foreclosure exacerbated the foreclosure caused by Armstrong. *See* Memorandum, at 6 & 14 (D.I. 274); *Standard Oil*, 337 U.S. at 295; *Motion Picture Adver. Serv*, 344 U.S. at 395.

Further, Rockfon objects to Defendant's Proposed Instruction No. 31 to the extent it is duplicative, redundant, and confusing to a jury. The statement "[i]f you find that there is no reasonable basis to apportion Rockfon's alleged injury between lawful and unlawful causes, or

that apportionment can only be accomplished through speculation or guesswork, then you may not award damages at all" is entirely duplicative of the previous statement "[i]f you find that Rockfon was injured by Armstrong's alleged antitrust violation, and there is a reasonable basis to apportion plaintiff's alleged injury between lawful and unlawful causes, then you may award damages" and must be stricken.

**Defendant's Proposed Instruction No. 32 (Damages Period).** Rockfon objects to Defendant's Proposed Instruction No. 32 for the same reasons discussed *supra* in response to Defendant's Proposed Instruction No. 3 to the extent Defendant's Proposed Instruction No. 3 is incorporated by reference therein. Again, Rockfon objects to Defendant's Proposed Instruction No. 32 as it is confusing and will likely mislead the jury. Defendant's Proposed Instruction No. 32 mistakes the statute of limitations period with the parties' relevant conduct. While the statute of limitations period may run until September 1, 2013, this should not bar Rockfon from addressing agreements entered into prior to 2013 if they were still in effect at that time. Rockfon is entitled to and does challenge all Armstrong agreements that were in place during the relevant time period regardless of when they were entered into. *See, e.g.*, *Aurora Enterprises v. Nat'l Broad. Co.*,, 688 F.2d 689, 694 (9th Cir. 1982) (recognizing that active enforcement of an illegal contract by an antitrust defendant will restart statute of limitations period); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 US 321, 338-39 (1971).

Further, Rockfon objects to Defendant's Proposed Instruction No. 32 as it is incomplete. Rockfon requests that the Court adopt the language set forth in Rockfon's Proposed Instruction No. 32.

**Defendant's Proposed Instruction No. 34 (Expert Witnesses: Selection Bias).** Rockfon objects to Defendant's Proposed Instruction No. 34 as it is highly prejudicial to charge

the jury with an expert-specific damages instruction. Should the Court adopt Defendant's Proposed Instruction No. 34, it is properly a "general instruction" as to how the jury may weigh any evidence, not an expert-specific damages instruction.

Dated: March 14, 2019

Respectfully submitted,

FARNAN LLP

/s/ *Michael J. Farnan*

Joseph J. Farnan, Jr. (Bar No. 100245)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street
12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
farnan@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Jeffrey S. Patterson (admitted *pro hac vice*)
Michael R. Murphy (admitted *pro hac vice*)
Morgan T. Nickerson (admitted *pro hac vice*)
Christopher S. Finnerty (admitted *pro hac vice*)
Emily E. Gianetta (admitted *pro hac vice*)
Jack S. Brodsky (admitted *pro hac vice*)
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Tel: (617) 261-3100
Fax: (617) 261-3175
jeffrey.patterson@klgates.com
michael.r.murphy@klgates.com
morgan.nickerson@klgates.com
chris.finnerty@klgates.com
emily.gianetta@klgates.com
jack.brodsky@klgates.com

*Counsel for Plaintiff Roxul USA, Inc.*